Good afternoon, be seated. We are here for the in-bank re-hearing in Lacey v. Arpaio. Council ready? May it please the Court, I am Michael Meehan, and I appear today on behalf of the newspaper, its editor, and its publisher. The essence of this 1983 action is a First Amendment retaliation claim. And it is a First Amendment retaliation claim which is not simply the arrest which was the culmination of the activities, but it is a First Amendment retaliation claim that begun over two years before that. The spark for the retaliation, the First Amendment retaliation, was the New Times' temerity to publish a story which questioned how a sheriff or why a sheriff would hide an investment of $600,000 in real estate in cash with a salary of $72,000 based upon a statute which supposedly protects the safety of the person and yet not protect his home address. And the First Amendment retaliation campaign by Sheriff Arpaio began at least as far back as February of 2005, when a newly elected county attorney, the defendant Thomas, took office, and in his very first meeting with the county attorney, the sheriff both raised this issue and expressed his ire at the New Times. From that point until 2007, there were numerous actions taken by the sheriff, all of which are part of the First Amendment retaliation campaign. He insisted that Mr. Thomas's office investigate. He insisted that the prosecutor's decision not to initiate a case be revisited. He did this notwithstanding that he had to know, and he certainly did know once this campaign begun and got very far down the line, that there was no way that they were ever going to discover or determine that there was probable cause to seize upon as a pretext the statute, which punished the truthful – the publication of truthful information that was publicly available. The only way that could have been done is arguably to be able to determine that the New Times – Excuse me, counsel. Yes, Your Honor. I'd like to acknowledge that Judge Pragerson has participated by telephone. Let me just test the connection and make sure that he is able to hear you and he's able to hear us. Judge Pragerson, can you hear us? Judge Pragerson? You want to stop the clock? Yes, let's stop the clock. Great. Judge Pragerson? Let's stop. I'm here. Oh, you are? I'm here, but we need to turn the mic up a little bit or the sound up a little bit for me. I can hear, but it would be better if it could be turned up just a wee bit. Okay, thank you. Mr. Meehan, if you could just speak more closely into the mic like the way I am, I think that will help a lot. I will do that, Your Honor. Okay, I'm sorry, Judge Pragerson. I had meant to – Oh, no, no. I heard every word you said, but it was a little strange, so it would be – could you just speak a little louder? Very good, thank you. Okay. Mr. Meehan, I'm sorry for the interruption. Please proceed. Thank you, Your Honor. Mr. Casey, I have a question. You've been talking about this campaign which has been going on since 2004, 2005. Here we're really discussing whether the pleading is adequate. Yes, Your Honor. Now, any of the facts which you've described, some of which are in the complaint, none of those facts affected your client until the subpoenas were issued. Isn't that right? Your Honor, I'm not sure that that's true as a matter of what could be proven from the complaint, because one of the allegations is, is that the Pinal County attorney attempted to defuse the situation by going to the newspaper and saying, will you take this out of the – out of the website, and asking the sheriff if he would do it, which he wouldn't. But I think more importantly is that this organization – But they didn't take it out. Not as far as I know, but more – So that was a request by the Pinal County attorney, and they said no, and no action was taken thereafter by him anyway. But, Your Honor – So why don't we get to the facts which you allege in your complaint which show damage to your clients at the hands of Mr. or Sheriff Arpaio? Your Honor, I do have to observe, however, that this circuit has precedence more than one which hold that it is not necessary, indeed, it's not an appropriate test whether, in fact, the particular individual was subjectively chilled, rather whether the action taken by, in this instance, the sheriff would chill a person of ordinary firmness. That goes to the intent element of the chilling, of the retaliation, but as to whether the act caused damage. Why don't we get to those allegations? Well, we submit that the act caused damage right from the beginning. When they didn't – wasn't this backdoor scheming, which you're alleging? Your Honor, the complaint does not say that the New Times was or was not aware of this. I can't speak off the record on that unless the Court asks me to. But this is – I don't think that it's appropriate to construe the complaint as it is alleged to conclude without dispute that there was no impact, that there was no knowledge, that there was no chill. I think that fairly under the Iqbal case and general pleading rules, the newspaper is entitled to prove, if it can, and we must assume that it could do so. Well, it certainly didn't chill them as far as publishing the contents of the subpoena did it? That's true. But again, Your Honor, that is – But under the circuit's precedence, that is not determinative. A person of ordinary firmness, perhaps these folks had more than ordinary firmness. I think one – Where's the allegation they even knew about the backdoor scheming against them? I think one can fairly conclude that at least from the time that the Pinal County attorney sought to resolve this, that they did at that point, which was before 2007. But let me go forward a bit, because certainly there was more. The sheriff got together with County Attorney Thomas and hired Mr. Wilenscheck, who they all knew was not an independent, a neutral prosecutor. Mr. Wilenscheck did issue very broad, very intrusive, very burdensome subpoenas. He asked the newspaper to disclose sources, materials, information, not only about the story that would theoretically be the subject of the investigation, but about any story that had been critical of the sheriff, which would start back in the 1990s. The subpoena sought information about the identity and viewing habits of literally Indeed, once the story of the subpoenas was published, Mr. Wilenscheck also issued another subpoena, which asked similar questions about a story which had been written by the New Times and published relating to the sheriff, which was not related to this topic. Mr. Meehan, is it your position that a prosecutor whose impartiality might reasonably be questioned in making the decision to engage an independent prosecutor or to refer the matter to a prosecutor in an adjoining county is not entitled to absolute immunity? Yes, Your Honor, and there are two reasons. Number one is, is that the Supreme Court, and this Court in the Milstein case, has made absolutely clear that a prosecutor should not deem himself to be engaged in the advocacy process unless and until he or she has determined that there exists probable cause, which was not the case here. And number two But I'm asking you about the decision. As I understand your accusations, Mr. Thomas was not capable of rendering an impartial decision because he was too close to the sheriff. That's right. So what is wrong as a matter of Section 1983 law with a prosecutor who determines that there may be a reasonable question as to his impartiality, and therefore he should refer the matter to an independent prosecutor outside of his office? Why is that decision not subject to protection under the doctrine of absolute immunity? Because, Your Honor, given the point that I just made, that is to say that this decision by Mr. Thomas occurred before the normal breakpoint, and given the fact that the Supreme Court's Van Kamp decision, reviewing this Court's Goldstein decision, made it very clear that although it was talking about administrative procedures or about actions or processes that might have occurred before trial, they related to the trial process. And that is said several times in the Van Kamp opinion. And given the Supreme Court's firmness about the fact that there may be a reasonable question as to his impartiality, why is it that Mr. Thomas, who is the Supreme Court's Goldstein decision, made it very clear that there might be a reasonable question as to his impartiality, why is it that Mr. Thomas, who is the Supreme Your Honor, you have now asked me a different question. The question you asked me first was should he have immunity, and I think not, for the reason I said. What you're now asking me about is what are we complaining about from the point of view of Mr. Thomas. You told me that he doesn't enjoy absolute immunity for that decision. And I'm trying to understand how, as a matter of constitutional law, a person, a potential subject of a criminal prosecution, a putative plaintiff, and a future civil rights action, is harmed from a prosecutor's decision to recuse because his impartiality might be questioned. The harm came not because he decided to recuse. Had he recused and hired a totally independent, neutral prosecutor other than Mr. Thomas, we'd have an entirely different case. But here the problem was that he, Sheriff Arpaio, got together, they decided to hire Mr. Willinchek. They knew Mr. Willinchek not only was not impartial, because he, too, had been the subject of criticism from the New Times, but he and Mr. Thomas, as we allege in the complaint, had this cozy relationship by which Mr. Willinchek was given business by Mr. Thomas and also given business by the Sheriff and wanted to do the Sheriff's bidding. All of those things are attempts to use somebody else, just like sending a sheriff out to arrest somebody, to carry out his desire. Your claim is really that he failed to recuse as to the selection of a substitute. The decision to select a substitute is something as to which he should also have recused himself. No, Your Honor. No. I think you do.   He had a bias, and so he shouldn't pick his substitute, because that itself is a mayor's decision. No, I'm not – he shouldn't have picked this substitute. But, again, it seems to me that we need to look carefully at two different things. There's an allegation of a 1983 violation. That allegation includes that Arpaio and Thomas and Willinchek all had it in for the New Times, and they got together and decided to do in the New Times by various things, including the subpoenas, including the attempt to get him fined $90 million and so forth. That's the violation. Now, the officers come back and say, no, but we have immunity. And the prosecutor says, I have absolute immunity. But the Supreme Court says, and this Court has said, and, again, I cite the Milstein case, because I think it's a very good, comprehensive discussion of this, that until the decision to prosecute has been made, not the decision to employ a prosecutor, but the decision that there is to be sought a determination of probable cause. And, therefore, the preparation has begun, the initiation of the prosecution, that there is no absolute immunity because the individual involved, the prosecutor, is not intimately involved in the judicial process, or as the bank can indicate. But don't we want that decision made even before there's a determination as to whether or not there's probable cause? The question of a prosecutor's impartiality can arise before the charging decision is made, can it not? Yes. And you don't want us to write an opinion that says every time a prosecutor recuses because there's an appearance of impropriety or lack of partiality, that he's not entitled for protection for making that decision, do you? No, nor do I think I have to for this case, because, again, we have in detail and pretty tawdry allegations of a very serious attempt to violate my client's First Amendment rights. Again, if you're going to do that, you're going to have to do it. But just to be sure where your position is, you're arguing that there shouldn't be absolute immunity. I'm assuming you're conceding that there should be qualified immunity. Well, the concept would apply, of course. We don't think it applies for the reasons that we then get to. So your position would be that he's entitled to qualified immunity for the decision to hire Mr. Wilenschek? If he can otherwise defeat our claim, which is that he violated the First Amendment rights and that those rights were clearly established. In that event, while he would theoretically be entitled to qualified immunity, he would not be in effect. No, no. I want to make sure I'm narrowly focusing on the question I'm interested in, which I think is the same one that Judge Talmadge is interested in. I'm focusing specifically on the question of choosing Mr. Wilenschek once there is a perceived bias. Yes. Is that decision, you're saying it's protected by absolute immunity. You're saying it's not protected by absolute immunity, but I'm assuming you're saying it is protected by qualified immunity. Yes. I am saying that it is, except that. So there is some form of immunity. Yes. Except that under the facts of this case, they're not deserving of it. That's a different question. Okay. Yes. Your Honor, let me get back to the point that we have really two retaliation claims. One is a subset of the other, and that is the arrests. The arrests were the culminating event. The arrests were done without probable cause. I think that under this Circuit's precedent, the plaintiffs don't necessarily have to plead the absence of probable cause for a First Amendment retaliation claim. Did you allege, excuse me, did you allege that the sheriff didn't know or that he did know that the grand jury subpoenas weren't really issued by the grand jury? We did not allege that one way or the other. So my question was why, why did the sheriff not have probable cause? Because if the – there was evidence that the grand jury subpoenas were published, and if he didn't know they were bogus or you don't allege they were bogus, why wouldn't he have probable cause for that arrest? Your Honor, two answers, if I may. Number one is, again, under this Circuit's precedent, and this is part of Judge Bybee's writing in the panel opinion, where you have the person like Sheriff Arpaio who initiated this, was directly involved in it, continued involved in it, hired the – helped hire the prosecutor and so forth, that person is responsible, is liable for the actions that are taken by the others, whether or not he really is aware of it. The other one is – So that's a supervisory liability theory that you're suggesting? I don't think that it's cast in terms of supervisory liability, because I don't think we can say that Sheriff Arpaio was supervising Mr. Wilenscheck. What it is is – Well, if he himself didn't have probable cause or didn't know that these grand jury subpoenas were bogus, and therefore he had probable cause, what difference does it make what his relationship was with the people who did the arrest? I'm not understanding that. Well, again, Your Honor, I believe under the Skoug case of this Circuit, this is not an essential element, but we believe that the reason that it doesn't – So you're saying he did have probable cause? I'm sorry. I mean, Skoug says even if there's weak probable cause, it's not an essential element. So – but you are then agreeing that the sheriff did have probable cause or that the complaint failed to allege a lack of probable cause? Well, certainly the complaint didn't fail to allege a lack of probable cause. The district court was unhappy because we put in that conclusory allegation, which, of course, is not part of what you do when you weigh the sufficiency. But then there were factual allegations which I think would be sufficient to allow the plaintiffs to go forward and go to trial and submit proofs that these folks, Sheriff Arpaio, his deputy Hendershot, Mr. Thomas, Mr. Wolinchak, their respective staffs, were so involved, and particularly Sheriff Arpaio was so instrumental in starting this off and in pushing this campaign and pressing for the prosecution and pressing for the arrest and so forth, that he's liable for the actions because they were part and parcel of his desire to punish the newspaper. Mr. Meehan, as I read the record, the Maricopa County superior court judge who supervised the grand jury proceedings specifically instructed all parties not to discuss the matters before the grand jury, and that thereafter your client made, I think you acknowledged in your pleadings, a knowing decision to go ahead and publish the contents. Doesn't that on its face violate the Arizona grand jury statute? No, sir. No, Your Honor. It really doesn't. Because, number one, these were comments and certainly they were serious and intended by the trial judge, but these were comments at the culmination of a hearing. It did not turn what was not a valid grand jury subpoena into a valid grand jury subpoena. My clients at that point did not know whether or not the subpoenas were valid. But the important point, and this is something that the district court concluded and found, is that, indeed, it's just as if there was no grand jury. Obviously, a grand jury or more than one perhaps sat in the county, but no grand jury had been involved, invoked. Mr. Wilenshek had not taken the subpoenas to them. He had never told them about it afterwards. He did not tell them about the investigation. And, therefore, if the statute applies, which is a discussion that hasn't been gotten into here, but is there also, even if they were approved by the grand jury, these were not. And so whether it was prudent or appropriately respectful to the superior court judge for the newspaper to do what it did, the newspaper was entitled to do what it did. So as I understand your answer, it might have been consummatious, but it was not a crime. That's a good term. I wish I thought of that, Your Honor, yes. Well. Your Honors. Mr. Mahan? Yes, Judge. Yeah, this is Judge Pregerson. I want to ask you a question. Does Section 241 of the Civil Rights Act apply, or does it have any application relevant in this case? Your Honor, I must confess that I do not know the section to which you refer. Well, let me read it to you. All these statutes were passed after the Civil War, I believe. And this is what it says in part. If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any state, territory, commonwealth, possession, or district in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having exercised the same, or, I'll read it all, if two or more persons go in disguise on a highway or on the premises of another with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured, they shall be fined under this title or imprisoned not more than 10 years or both, et cetera, et cetera, et cetera. And you're not aware of that section? Now that you read it, I am in a general sense, Your Honor, of course. But I think what the relevance would be for this case is that, indeed, we do have a count for conspiracy in which we allege that the three defendants did act together and their purpose was to violate the First Amendment rights of the New Times. And therefore, they are liable as such. And you can construe that statute as violative of the criminal laws of the United States. Yes, Your Honor, I would certainly concede that as you read it and discuss it. Well, it's there. It's been there for over 100 years. Maybe you can get the special prosecutor appointed. Well, I don't think that's funny. Do you wish to reserve your time, Samir? Yes, I do, Your Honor. Okay. We'll hear from the other side. I know there are two counsel. Have you – are you splitting your time? Yes, Your Honor, we are. I'm Eileen Gilbride here for the Arpaio defendants. And I am going to try to leave Mr. Casey at least five minutes for the other defendants. I'm going to speak on behalf of the Arpaio defendants. Okay. What's your clock? Yes. Your number there, when it goes to zero. Yes. There will be nothing for you to leave, so. I'll try hard, Your Honor. I'd first like to talk about the investigation of plaintiffs for publishing the sheriff's address on the Internet. I'm sorry. Just to make it clear in my mind, whom are you representing and who – you said Arpaio defendants. Who other than Sheriff Arpaio? Who else? His wife. Just Sheriff Arpaio and his wife. I see. Okay. And then Mr. Casey represents all the other defendants. Everybody else. Everybody else now. He gets five minutes and you get 25. Okay. Believe me, if the Court has no questions, I'm happy to leave him more time. And I will try to leave him more time. But first I would like to talk about the investigation of plaintiffs for having published his address on the Internet, and then second, I'd like to talk about their arrest for having published grand jury material in the New Times. Now, plaintiffs argue that an investigation alone can violate the First Amendment, and they argue here that it was the scope and the manner of the investigation that violated their First Amendment rights. And they rely heavily on a case called White v. Lee. And this is exactly why the panel majority was correct in this case, because there are no allegations that Arpaio had anything to do with the scope and manner of the investigation. It was Willenchek who did the investigation, who issued the subpoenas, who decided what to do in that regard, and there are no allegations that Arpaio had anything to do with the actual investigation. And in White v. Lee, the case on which they so heavily rely, it was the actual investigators who were the defendants in that case. So what exactly do you think he needed to have done to be involved? I mean, as I understand the case, and maybe you can correct me, the claim is that he leaned on Thomas. Yes. And then Thomas handpicks Willenchek. Right. And that this is all done to please your client. And everything they did was sort of under his watchful eye and subject to pressure from him. What else do you need? I'm not saying any of this is true. I'm just saying this is what I read to be alleged. Yes. And if that's what it is, what else is needed? Well, because under Section 1983, one defendant is not liable for another defendant's conduct. It has to be he has to be liable for his own conduct. And what if someone is acting at the direction of someone else? There is supervisory liability. No, I'm not talking about supervisory liability. I'm saying you go do that for me. I'm not a supervisor. I'm just telling you to do it. We've got some relationship that will encourage him. So do what I want him to do. I tell him to go do it. He does it. You're saying there's no liability on me for what he just did when I told him to do it? I'm saying that the complaint doesn't allege that what Willinchek did was directed by Arpaio, that Arpaio was the one who said, issue these subpoenas, you know. Well, look, if I, you know, X says to Y, you do what's necessary to get Z to do something, and then Y goes and breaks Z's legs, why wouldn't you say X said, you know, I don't want to get involved in the details, but you do what's necessary, and he says, okay, well, I'll break his legs, and then why isn't that enough to go to a jury on the question of whether when X says do what's necessary, he may do what's necessary, lawful or unlawful? Well, in this case, it is, and again, if you read the petition. Well, deal with my case. I am. I am dealing with your case. In my case, but in the situation I gave, you wouldn't don't dispute there would be liability, right, by X who says go do what's necessary and leans on the intermediary, right? If in a supervisory case, I would agree with you. No, it's not supervisory. What's the threat? I'm the sheriff. I carry guns. I've got deputies. I am responsible. I've got great political power. I'm going to make it really, really make you really, really sorry if you don't do what I want. You need anything more than that? Well, I don't think there's an allegation in this case that will in check. Deal with my case. I don't. Let's say that's the relationship. It's a sort of leaning coercion, exercise of power, and say you do what's necessary to make sure that they fall in line. If your complaint alleged that the prosecutor's independent judgment was overcome, maybe. But in our case, there's no allegations that Willinchek's independent decision about how the scope and manner of the investigation, which is what plaintiffs are complaining about here, is the scope and the manner of Willinchek's investigation. There is no allegation in the complaint that Arpaio was personally involved in the scope and manner of the investigation. So, counsel, how do you account for the conspiracy allegations then? There is no conspiracy claim in this case because it was waived on appeal. There was a conspiracy count. Why do you say it's waived on appeal? There was a conspiracy count, and when plaintiffs appealed to the panel, they did not raise any question about the conspiracy ruling. The conspiracy count was in the footnote. They said that the conspiracy count, which was dismissed because they said there was no constitutional violation, just as they said about all the others, and they then said in the footnote that the same arguments that applied to the others where they were dismissed because there was no constitutional violation applied to the conspiracy count. I believe what the footnote says, and there's two footnotes, one at the beginning and one at the end, because we moved to strike this argument, the conspiracy argument, in the reply brief for exactly this reason. It was not raised in the opening brief. It wasn't appealed. It wasn't raised before the panel. And therefore, that's the question I'm asking you. It may have been stricken by the panel, but I'm saying to you, when they said in the opening brief that the same constitutional violations that they were appealing applied to the conspiracy count, why isn't that raising it? I don't believe that was raised in the opening brief, Your Honor. It was raised in the reply brief. No, I'm talking about the opening brief. Do you have a complaint? I'm sorry? Do you have a complaint? You have the complaint? I do have the complaint, yes. But, you know, I just cracked it open to paragraph 114, which is on page 25. Why doesn't that say everything that needs to be said? It just fell open there. I don't know. And I think it's sort of a random one, because I cracked open another page and it gave me 66. It's pretty good, too. But why doesn't it say, you know, "...his office pressured attorneys to pursue the matter despite obvious problems with the case and concerns about the legality of an investigation. He applied unfair pressure and demands upon prosecutorial bodies, abusing the power of his office and influence to investigate, prosecute, arrest, and jail plaintiffs." Because being investigated, because pressuring somebody to investigate is not a First Amendment violation. I mean, he wasn't. It says prosecute. It says prosecute. Arpaio wasn't – first of all, plaintiffs weren't prosecuted for publishing the address. They were prosecuted for publishing grand jury material. They weren't prosecuted for publishing his private address. They were investigated for that, and Arpaio pushed for it. That's what it's alleged. But he did not control the scope and the manner of the investigation. There's no allegation that he did. Let me just – just let me just – are you with me on the page? Yes. This is now the third sentence of paragraph 114. Let's take it one word by word and see where you and I disagree. He applied unfair pressure and demands upon prosecutorial bodies, abusing the power of his office and influence to investigate, right? Yes. To prosecute, arrest, and jail plaintiffs. Okay? So the introductory phrases apply to all of those, to exercising the power of his office, unfair pressure, abusing his power, to get them investigated, prosecuted, arrested, and jailed. Yes. Why – which one of those do you think is not enough to – to – or all of them put together, why aren't they enough to – to show his involvement? Because when you read the facts alleged, which is what Twombly calls for, the facts even call, on page 18, the abusive Willinchick investigation. They don't call it the abusive Arpaio investigation. Yes, they have conclusory, you know, legal conclusions that are sort of couched in factual, but they – but that doesn't satisfy Twombly. We need facts to show that Arpaio was personally involved in the scope and the manner of the investigation, and we don't have that. But you're now saying something just slightly different, just to make sure I understand. If there were enough facts to satisfy what you think is sufficient to show that he did what is claimed here, he applied unfair pressure and demands, abusing the power of his office to force prosecution, arrest, and jailing, is that enough? It might – it might be enough. I mean, you're saying he wasn't personally involved in the details. Right. I mean, if he keeps saying that. Right. But let's say he wasn't personally involved in the details. Let's say he merely – and I say merely advisedly, but let's say he just says that he applied unfair pressure, abusing the power and influence of his office to – to cause him to do these things. Does he have to get involved in the day-to-day details of what they do, or is the – is that enough of an allegation, if substantiated? He has to be personally involved for Section 1983 liability, because – because Section 1983 requires each individual to be liable for his own conduct, not for the conduct of others who are not – when it's not a supervisory situation. But do they have to be involved in every detail, or is involvement overall enough? It may be – it may be overall involvement is enough, but there's no – there's no allegations of personal involvement, period, in the scope and manner of the investigation, which is what plaintiffs are claiming hurt them, was the scope and the manner of the investigation, the abusive subpoenas. That was not Arpaio. That was Wilenschek. And the – If the sheriff had said something like they had met in his office and he told Wilenschek that these editors needed to be silenced, and he wanted Wilenschek to do everything within his power to silence them, he didn't care how it got done, but he wanted them silenced. And so Wilenschek goes out and does a variety of activities. Are you saying that there's no Section 1983 liability on Arpaio once he sends his deputized in the quote sense person out that Arpaio's free and clear? It wouldn't be aiding and abetting or anything like that. If there had been – if there was a current conspiracy claim, potentially, but there's not. Let me go back to whether there's a current conspiracy claim. That was the fifth count. Yes. The ones previously that were dismissed by the district court because there was no constitutional harm. Correct. So the opening brief says, for the same reasons set forth herein – Page 22. Page 22. The district court also erred in dismissing the 1983 conspiracy claims alleged in count 5. They've already said why there was a constitutional harm, in their view, in counts 1 through 4. And the district judge said there's no constitutional harm in the conspiracy case claim, after saying there's no constitutional harm in the first four claims. And they say, for the same reasons, we ask you to reverse on the conspiracy claim, because there is constitutional harm. Why is that not raising it? I was under the impression that it was not raised in the opening brief. This is the opening brief. I apologize. I don't have it in front of me. We're here. You come to court without briefs? What is your mind? It's footnote 6. I believe you. I believe you. That it says that there. So does that change your response? Well, the panel still found that it was not argued and discussed, and so it was stricken. Well, maybe the panel was under the same impression you were. So if the panel was under a misapprehension regarding that, and it's in the opening brief, does that change your answer? If they raised it in the opening brief, they raised it. So what does that mean for your response, that there is no allegation that the sheriff was personally involved? There's – I still believe that there's no – that there's no allegation that the sheriff was personally involved in the scope and manner, because there's still no allegation that he told Willenchik, issue these. But Judge Rawlinson's question concerned conspiracy. So you continue to answer my question. I think you need to answer Judge Rawlinson's question now. She asked about conspiracy. Your answer was, oh, it's not alleged, it's waived. Well, she's now pointed out to you that it's not waived. Does that change your answer? Yes or no? I'd like to say no. Well, you could. You could. It would be wrong. It was – I believe we didn't have a chance to address it in our brief, which is why we moved to strike it from the reply. But you did have a chance. Yes, right here. You chose to move to strike, but you had a chance to address it. So we're giving you another chance to address it now. Well, if they act accurately and didn't – if raised – Not coming to court without the briefs in the case is really poor lawyering itself, but not knowing what's in those briefs is even worse. Well, I believed I knew what was in the brief and therefore moved to strike it, which was granted. And that's why I just made the mistake of relying on that, I suppose. But I would like to get to the arrest issue before turning it over to my co-defendant counsel. Well, before we go there, if we do not agree with the panel that the conspiracy claim, conspiracy count is null, does – do you lose on the issue of whether or not there was personal involvement of the sheriff in view of the fact that all conspirators are responsible for the acts of any conspirators? So do you lose, then, your argument on that point? If they raised it, then they may have stated a claim for conspiracy. But still, Arpaio wins on the investigation claim. Well, how? Itself. Itself. Just itself. If it's a conspiracy, why doesn't that bring in – Well, that's the only way. That's what I'm saying is – Let me, let me, let me – I'm sorry. Why doesn't that bring in everything that all the other defendants did, all the other conspiratorial members attributed to each of the members? That's how conspiracies work. So that way he doesn't have to be personally involved. The conspiracy doesn't work for him. So you have an answer to that? I don't have an answer for that. I don't have an answer for that. Okay. Do you want to pass the baton? I do want to talk for a few minutes about the arrest and then pass to my co-defendant's counsel. Okay. On the arrest issue, again, there's no allegations that Arpaio participated in the arrest or ordered it, but – Does he do a lot of arrests himself? Not that I know of, Your Honor. I'm guessing that there are a fair number of arrests in Maricopa County? Yes, yes, sir. In Maricopa County, that he personally, the sheriff himself, doesn't? There's no allegation that he did, that he was involved. In fact, the complaint alleges that it was Chief Hendershot. Counsel, I'm looking at paragraph 110. Arpaio, too, disavowed advanced knowledge of the subpoenas and denied that he ordered the arrest, even though Willinshek has publicly claimed the arrests were conducted, authorized, approved, and or directed by Arpaio. It doesn't say that he did it, though. I mean, that's what Willinshek claims. But it doesn't allege that – But at this point, what are they supposed to prove? What are they supposed to allege at this point? Well, even if they allege that Arpaio – even if we say they allege that Arpaio ordered the arrest, that's fine. But there's still probable cause for it. And probable cause defeats their First Amendment retaliation claim. Well, that's very different, because your argument was Arpaio was not involved. And they did not allege that Arpaio was involved, and they clearly did allege that  I don't think they allege that – You don't think that that – you don't think the paragraph 110 alleges that? Or paragraph 111, Willinshek's partner, William French, disagreed, later confirmed that Willinshek did indeed authorize and advise Arpaio to conduct the arrests? Right. It still doesn't allege that Arpaio did it or that he ordered it. It said Willinshek believed or Bill French believed this, but it doesn't say that Arpaio ordered it or Arpaio did it. But that's only the first argument. The second argument is that there's no probable cause. And again, they admit that they published grand jury material. There's no allegation that the arresting officers or Arpaio knew that the subpoenas were invalid when the arrest took place. Now, we've said that in Skoug and Dietrich that probable cause, the existence of probable cause does not defeat a – that sort of 1983 action, especially when there is strong evidence of retaliatory motive, as there is alleged in this complaint. Why would it make any difference whether there was probable cause or not? Because there's – well, there's no evidence that Arpaio knew that there was – that the subpoenas were invalid. Even if he had probable cause, though, given the strong evidence of retaliatory motive that's alleged in the complaint, why isn't that enough under Dietrich and Skoug? Well, I guess then how could – how could law enforcement officers ever arrest anybody without being – without the fear of being sued for it, even if they have probable cause? I mean – I mean, here the plaintiffs are hiding behind the First Amendment in order to get by knowingly, purposefully violating the law. What are law enforcement officers supposed to do, not – just not arrest them or, you know, they're supposed to let them get by because they're hiding behind the First Amendment? That's my answer to that. I have – I see I have 9 minutes left, and I would like to just end by urging the Court to make its decision on the – based on the actual allegations of the complaint and not based on an embellished story that the actual allegations simply do not write. And at this point, I'll turn it over to Mr. Casey. Okay. Thank you. Good afternoon, Your Honors. My name is Tim Casey. I represent Defendants Andrew Thomas, his wife Anne Thomas, the county attorney's special prosecutor, Dennis Wilenscheck, and his wife, Becky Bartness. At this hearing, Your Honors, the plaintiffs have asked this Court to reconsider the district court's decision granting absolute prosecutorial immunity to Andrew Thomas and really the united decision of both the majority and the dissenting judge in this Ninth Circuit or the Ninth Circuit panel earlier affirming the district court's granting of absolute immunity. I respectfully request that this court should affirm the prior two orders. But granting of absolute immunity to? I apologize? Granting absolute immunity to whom? Andrew Thomas, the county prosecutor who appointed the independent or the special prosecutor, Dennis Wilenscheck. For the moment, my question is not a factual question as to whether or not he would be entitled on the facts to qualified immunity. My question is only directed as to whether absolute or qualified immunity should apply. And the question is, that I have is, should it apply to his, to Thomas's decision to appoint Wilenscheck? Now, the line that the Supreme Court has given us in Embler and so on is it's a tough line to discern. I mean, I'm the first to say I have trouble sometimes figuring out what's investigatory behavior, that only gets qualified immunity, what's litigation-involved behavior that's entitled to absolute immunity. But at the time that Thomas appoints Wilenscheck, he's appointing him to do what? To investigate, I think. So why doesn't that look like investigative behavior such that it is qualified rather than absolute immunity? Fletcher. I think the answer is, is this, and let me not give you a long-winded Irish explanation, is I'm not sure that the appointor knows exactly what is going to happen at the time he makes the appointment. I think the normal course of the case is that he's going to make the appointment. Scalia. But that hurts you, doesn't it? No, I don't think. No, I don't think. If it makes, if he knows there's going to be a prosecution, then you might say that's a prosecutorial decision. If he doesn't know, then obviously you have to look some more. And why doesn't that then feed into Judge Fletcher's question, which is, that's an investigation. So it's not a prosecutorial decision because no decision has been made to prosecute. I don't believe that's the case, Your Honor, respectfully, because it's not. But you said it. You said he doesn't know. So I'm, I was suggesting that he doesn't know is a, is an answer that hurts your case rather than helps it. And I respectfully don't believe that's the case. Explain to me why. And here's why. It's because while I think in the common experience any decision whether to prosecute necessarily involves the adjective investigate, you don't know whether you're going to prosecute. And whether you prosecute a person, actually proceed to that litigation or not, has always been held by this, this circuit and by the United States Supreme Court as a decision that is entitled to absolute immunity. So whether or not in a point or, like Mr. Thomas actually says at this point, there's going to be an investigation leading to the decision to whether to prosecute or not is immaterial. Ultimately, what, however you get there, the entire decision to appoint is for that person to make a decision whether to prosecute. And under Arizona law, that decision is not under the law.   I mean, that's the question. When you're investigating, put into one side whether you're appointing somebody else to do it or not, I'm just the prosecutor and I'm investigating. Of course I'm investigating in order to determine whether to prosecute. But the Supreme Court has told us that investigation gets only qualified immunity. Yes. No, you're absolutely right. Just investigating is in the field of administrative tasks. But what we have here is not just simply an investigator which is normally determined or actually done by something like a detective, a police officer, but you have necessarily a person that has to make a decision of who and you're using, Mr. Thomas has to use, whether you agree with it or not, he has to use his legal experience and his discretion as an actor or an advocate for the State in determining. So is your position that whenever an investigation is done by a prosecutor, it's subject to absolute immunity because it's always prosecutorial? No. Okay. No. Then I don't understand your answer at all. I could understand that answer. He's a prosecutor. He's investigating. It's always with an eye to the possible prosecution. So it's always that answer I would understand. I'm not sure I would agree with it, but I would understand it. But now I don't understand what you're saying at all. Judge Kaczynski, if I'm understanding the exchange here, what I think what we're doing is we're making a focus on the function of task versus the function of appointment. And if you look at simply the function of task, then you have that fine demarcation between investigative, administrative, or prosecutorial. What I am suggesting in my analysis is that you actually have to back up a step and you have to look at the function, because that's how we determine whether or not absolute liability, excuse me, absolute prosecutorial immunity attaches. And the function is the selection of the counsel who's eventually going to do an investigation and decide whether to prosecute. So I would respectfully submit, Judge Kaczynski, that you that in my analysis we back up and we look at the function, and that is the actual selection. The function that goes before investigation. So if anything, it's less close to actual prosecution than investigation. In investigation, you could at least say, well, as you're investigating, you're making decisions whether this is who might be guilty, are you going to go after this person. You're making prosecutorial-type decisions. The decision to appoint somebody to take your place seems to me to come prior in the process and, therefore, is farther removed from actual prosecution than a mere investigation. That's what it strikes me as. It's a personnel decision, basically. No. It is not. Well, why not? Why isn't it a personnel decision? If you look at the Van Camp decision and you look at, I think it is, if you could bear with me for a second, it may even be the Burns v. Reed decision. There is a big difference from a prosecutor, whether elected or appointed, making a staffing decision of who is going to sit at this table and staff a particular matter as a general hiring practice versus actually selecting a prosecutor because he or she believes that there is a conflict or a perceived conflict to handle a particular matter. Staffing decisions on cases have been granted absolute immunity, but staffing in an office, general hiring decisions are considered administrative, just like payroll administration would be considered administrative and are not entitled to absolute immunity. But when you are making a decision of, beyond staffing your office in general, that Tim Casey is going to go on case number A, that is where you're using your prosecutorial discretion as an advocate of the State, where you are deciding in your mind that this is the person that is qualified to evaluate evidence, that's evaluating claims that can be asserted, and that could be evaluating basically the application of the evidence to those claims. Is the same true with respect to hiring decisions? No. A hiring decision for staff, I'm going to fill those 20 vacant offices, is not entitled to absolute immunity. No, that is not the case. But what if you're designating, when you say I'm putting Joe Schmoe to this case, what if I'm appointing Joe Schmoe or assigning Joe Schmoe to this case for the purpose of investigation? That appointment in itself has absolute immunity. Even though it's solely for the purpose of investigation by the person I'm appointing? Yes, Judge Fletcher, absolutely. And if the person appointed goes out and violates rights, they're not entitled, because it's investigatory under the law of this Circuit and the Supreme Court. As far as I understand, it is not entitled to absolute immunity. But the actual appointment decision. Even if I'm appointing someone solely for the purpose of investigating, I've got absolute immunity for that appointment? I assume that when, in your question, Judge, and maybe you're not going as far. I'm assuming when you say that, that that investigation is necessarily going to lead to a determination of whether to prosecute. Yes, but I'm not appointing him to determine whether or not to prosecute. I'm appointing him only for the purpose of investigation. I'm still going to stick with the original answer and say that is subject to absolute immunity, because I don't believe that that hypothetical actually – I don't believe that hypothetical is going to fulfill the role and the purpose of absolute immunity, because it would open – I hate the word, slippery slope – but the slippery slope of litigation in 1983 for – Because you're looking at the language in Vandekamp that says whether or not the prosecutor, him or herself, is acting as an officer of the court when making that appointment, regardless of what the person who's appointed does after being appointed. Rolinson? Yes. Yes, absolutely. It's – because the prosecutors, their goal is not just to obviously get a conviction. Their goal is to get – in principle, is to do justice. And obviously, to do justice, you want to make sure, if you believe you're conflicted out, that you have the right person in there. You're out of time. Thank you. Thank you very much, Your Honors. Mr. Casey, could you address a question that we talked a bit about with Ms. Meehan, which was, is the conspiracy claim not before us because it has been waived by not being brought up? Yes, Your Honor. It definitely is before you. Judge Reinhardt – You're Mr. Meehan, correct? I am, yes. You didn't have a name changed? Not that I've been advised. But, yes, it's before you. It's before you because, as Judge Reinhardt pointed out, we said so in the footnote. It's before you because it wasn't discussed more in the opening brief because, as has already been acknowledged, the district court disposed of that on the issue of whether there was a violation. It's before the Court for reasons that we explained at a little bit of length in docket number 48, which is our response to the motion to strike. It's before you because, as explained in that response, the defendants in numerous places took the tactic of saying, or just me individually, just me individually, and that's what prompted us to elaborate on it further. This is a question that I think we should ask the Court to answer. This is a question that I think we should ask the Court to answer. The motion was granted by the panel, I submit erroneously, and with the effect of that granting of the motion, does that take conspiracy out? If the motion was granted as part of the opinion which has been vacated, so at this point I believe it is before you afresh, that would be my understanding, and it really shouldn't have been granted. We explained, as I said in our response, how it was that we were responding. And with respect to the contention that there was no opportunity to address that particular point, I would simply note that there was no reply file to our opposition to the motion to strike, and quite candidly, I thought that that probably was the in the opinion that granted the motion. So I definitely submit that the conspiracy claim is before you and that it takes you a long, long way. I also submit that, as has been discussed in some detail by several of your Honors, that paragraph 114, the paragraphs before it, really do set forth the kind of factual allegations or an Iqbal that should suffice to get us even with a direct, direct involvement of Sheriff Arpaio and not have to go to the absolute evidentiary detail. Kennedy, you mentioned 114. It says, Arpaio and or his office and top officials ordered and made the late and or made the late night arrests and pleadings. Does that tell us that Arpaio did it? Does it tell us that his office did it? Does it tell us that his top officials did it? I think, Your Honor, it is customary and ordinary pleading in the alternative. I would also point out that there is the paragraphs 110 and 111, which I think are more direct. 110 says it was directed by Arpaio and or his aides. Yes. Including Chief Henderson, who in paragraph 25, you allege, did it. Yes. So you have several theories of who ordered the arrests, some of them contradictory. And then the one I like the best is that defendants dispatched the unit to make the arrests. Defendants include Arpaio, Thomas, Wellincheck, Mrs. Arpaio, Mrs. I count it 27. All 27 ordered the arrests. I'd be happy to. Do you want to take it seriously? Well, I do, Your Honor, because I'd, of course, be happy to discount the John Does and so forth. But when you think about what we have to do. Well, the John Does were all agents and employees of Arpaio. Yes. Do you want to discount them? Well, at this point I don't know that I have anything. But let me get to the nub of it. We have alleged that Sheriff Arpaio, Mr. Thomas, Mr. Wilinchek, all together, they were doing business together, Wilinchek was representing the sheriff, both personally and professionally, and the county was paying for it. In paragraph 112, you said that the arrests were ordered by a conspiracy between Wilinchek, Thomas, and Arpaio. Yes. No question. Now, what do you do with the allegation that the 27 defendants did it? What do you do with your allegation that Hendershot did it? What about the allegation that the aides did it or the officials did it? Now, we take Iqbal. If we take Iqbal seriously, it has to be personal involvement laid out in the facts. Which theory of that, of your pleading, do you want us to take? Your Honor, I don't think that I think that at this point we should be given the latitude to say we need to sort out whether it was Hendershot, through Arpaio, or whether it was Mr. Wilinchek. You've first amended a complaint. You've known about this. You've been publishing newspaper articles about it for years. But we haven't. Don't you know yet whether Arpaio did it or didn't do it? I have not had a chance, my client has not had a chance to take any discovery, to take any testimony from Sheriff Arpaio or Mr. Hendershot. But you allege that Wilinchek did it with no and, buts, or fors. But you can't allege that Arpaio did it? We've alleged in the way that we've been talking about it, and I again submit that this is adequate, and I think I certainly understood Judge Bybee's dissent to say that we did not need to get to the level of specificity of the evidence that you and I are now talking about, Judge, and that this is sufficient. I really think that it is. I'm not sure that I can satisfy you any more than that. And Nick Ball, at least they allege that Mueller and Ashcroft did it, named them. Well, to be fair to my client and the folks who were drawing the pleading at that time, they did not have the benefit of that opinion. And so I suppose if one wants to stringently and strictly apply that opinion to this pleading, then there ought to be leave granted to amend to comply with it, if possible. But didn't the district court point out that deficiency in your original complaint? And then you filed the First Amendment complaint, and the district court said, you haven't given me any additional details. Yes, that's true. That is true. So you had the chance, but you didn't. But again, all I can say is I believe that the allegations that we have made, which were the best that could be done under the circumstances, really are adequate. But your retaliation claim does not rest solely on the arrest. Your retaliation claim rests on a course of conduct, including the subpoenas and other things. Very much so. Very much so. Which are alleged with some specificity. That is very, very true, Your Honor. I'm about to run out of time, but if I may, I'd like to make one point. Judge Ikuta mentioned the Schood case, which I had mentioned, and I think that absolutely it's supportive of the position that we talked about in, I think, the tenor of your question. I just want to observe that very recently the Supreme Court has granted certiorari in a case called Weischle, R-E-I-C-H-L-E, Supreme Court No. 11-262 from the Tenth Circuit. I believe the issue presented has to do whether for a Fourth Amendment, not a First Amendment retaliation case, but a Fourth Amendment case, the pleading for a wrongful arrest as opposed to prosecution, which was in the Hartman opinion, needs to include a pleading of lack of probable cause. I would argue that irrespective of how that comes out, that Skoog is probably still going to be good authority, but I don't want to leave a false impression that there's not a possibility of some change in the law there. Thank you. Okay. Thank you very much. Our case is now in the stand-submitted. Well done. All rise.
judges: Kozinski, Schroeder, Pregerson, Reinhardt, Fletcher, Fisher, Tallman, Rawlinson, Bybee, Bea, Ikuta